HISTORICAL PUBLISHING COMPANY v. GEORGE N. LA VAQUE,[1]

April 29, 1896.

Nos. 9793—(37).

**Guaranty—Construction.**
    A letter of credit, or written guaranty, construed.

Appeal by plaintiff from a judgment of the municipal court of Duluth, in favor of defendant, entered in pursuance of the findings and order of Edson, J. Affirmed.

*Draper, Davis & Hollister,* for appellant.
*N. A. & H. G. Gearhart,* for respondent.

COLLINS, J. For the purpose of disposing of this appeal, we assume, without deciding, that defendant became bound by the so-called "letter of credit" signed by him, which, in so far as is here material, was in the following language:

"Dec. 9th, 1892.

"Historical Publishing Co., Philadelphia—Gentlemen: I request that should Mr. Jesse L. Jellison, of Duluth P. O., Minn. state, or-

1 Reported in 66 N. W. 1150.

der books from you at any time within two months from the date of this letter of credit, that you ship the same to his order; and I hereby obligate myself to see that they are paid for within thirty days after the books arrive at destination, provided Mr. Jesse L. Jellison should fail to pay, and the amount of the bill does not exceed $100."

The subsequent facts were that, relying on this letter, plaintiff sold and delivered to Jellison books of an agreed value of $61.20 on December 12, 1892, and also sold and delivered to him books of an agreed value of $156 a few days prior to the expiration of the two months. Jellison, soon after receiving the books first sold, paid the amount due, $61.20; and he also paid $50 on account of the second bill,—a total payment of $111.20. In other words, he ordered and received books of the value of $217.20 within the specified period, and he paid to plaintiff $11.20 in excess of the sum, $100, for which defendant agreed to become liable should he default.

It is the position of counsel for appellant that upon this letter their client was authorized to give credit to Jellison in an unlimited amount, within the designated period of time, and that defendant can be compelled to respond, to the extent of $100, for any delinquency on the part of the debtor, without regard to the amount of credit which may have been given him or the amount of his payments. We do not think, from the language used, that such was the intention of the parties. The defendant obligated himself to pay, should Jellison fail so to do, provided the amount of the bill did not exceed $100. Construing the writing fairly, it authorized credit to be extended in the sum of $100 and no more, and defendant only guarantied the payment of an indebtedness incurred not in excess of that amount. One can readily understand why a guarantor might be willing to obligate himself to answer for the default of another who proposed to purchase a small bill of books or other goods,—a quantity which could readily be disposed of if bought for sale, or for which the means of the debtor would render payment easy, if purchased for his own use,— and at the same time positively refuse to assume any liability if the proposition was to purchase books or goods in unlimited quan-

tities. In the one case the probability of default by the debtor might seem quite remote, while in the other it might appear almost inevitable. Our conclusion is that the credit given in excess of the amount specified in defendant's obligation was not covered by it, and that the two sales, both made within the specified two months, should be treated as a single transaction, and as one sale, in excess of the authorized amount. As to this excess the defendant incurred no liability, and, as Jellison actually paid more than the sum for which defendant became guarantor, he was discharged and exonerated.

Judgment affirmed.